McSPADDEN et al. v. VANNERSON et al.
(No. 561.)

(Court of Civil Appeals of Texas. Amarillo. June 27, 1914. Rehearing Denied Oct. 10, 1914.)

1. BOUNDARIES (§ 40*) — ACTIONS — JURY QUESTION.

In an action involving a disputed boundary of land, the question whether a corner as located by the surveyors was the true corner *held*, under the evidence, for the jury.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 196–204; Dec. Dig. § 40.*]

2. BOUNDARIES (§ 5*)—SURVEYS—CHANGE IN.

Where earlier blocks have already been located on the ground, their location cannot be changed because there is a conflict between them and the description of subsequently located blocks.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 44–46; Dec. Dig. § 5.*]

3. BOUNDARIES (§ 37*) — SURVEYS — OFFICE SURVEY.

That a survey was merely an office survey may be established by circumstantial evidence.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 184–194; Dec. Dig. § 37.*]

4. BOUNDARIES (§ 40*)—ACTIONS—EVIDENCE —SUFFICIENCY.

In an action involving a disputed boundary to land, the question whether the line should be governed by courses and distances or by artificial monuments claimed to have been laid out by earlier surveyors *held*, under the evidence, for the jury.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 196–204; Dec. Dig. § 40.*]

5. TRIAL (§ 260*)—INSTRUCTIONS—REFUSAL.

The refusal of requested charges covered by the general charge is not error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

6. EVIDENCE (§ 317*)—ADMISSIBILITY—HEARSAY.

Testimony that a surveyor told persons for whom he surveyed land that a mound was an established corner is inadmissible as hearsay, not being evidence of general reputation.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1174–1192; Dec. Dig. § 317.*]

Appeal from District Court, Floyd County; F. P. Greever, Special Judge.

Action by A. A. Hogan against F. J. Vannerson, who cross-petitioned against D. A. McSpadden and others. From a judgment for plaintiff and the original defendant, the impleaded defendants appeal. Affirmed.

Carl Gilliland, of Hereford, and Martin & Zimmermann, of Tulia, for appellants. Mathes & Williams, Randolph & Randolph, and R. C. Joiner, all of Plainview, for appellees.

HENDRICKS, J. The land in controversy is situated in block M–15, Swisher county, Tex., which is a block of irregular shape, con-

sisting of 36 surveys, and the field notes of which are signed by one Summerfield; all of the surveys of said block purporting to have been made on October 4, 1879.

The field notes in the surveys on the north call to tie to block R. C., which is immediately east of block W–1; five sections on the west side of the block also join a corresponding number of sections in block W–1, on the west. All the calls in all the field notes call to run either east or west, north or south, and to tie to each other, either by direct calls for each other or by calls through intervening surveys in the same block. Each (call) of said field notes (in each survey), in calling for distance, calls to run 1,900 varas; and each field note only calls for a "mound," except the field notes to the following surveys: Nos. 2, 3, and 37, the calls for which, beginning at survey No. 2, respectively, call for a "mound" and other objects, and are as follows:

"Field Notes to Survey No. 2.

"Beginning at a mound, S. W. corner sur. No. 1, same block; thence W. 1,900 vrs. to a mound, from which a large lime rock 80 vrs. north of the S. fork of Red river, brs. 67¾ W. 910 vrs.; thence N. 1,900 vrs. to the S. W. corner of sur. No. 14, in block R. C.; thence E. 1,900 vrs. to a mound; thence S. 1,900 vrs. to beginning.

"Field Notes to Survey No. 3.

"Beginning at a mound, the S. W. corner of sur. No. 2, same block, from which a large lime rock 80 vrs. N. of south fork of Red river bears S. 67¾ vrs.; thence S. 1,900 vrs. to a mound; thence E. 1,900 vrs. to the S. W. corner of sur. No. 134, block M–10; thence N. 1,900 vrs. to a mound; thence W. 1,900 vrs. to the beginning.

"Field Notes to Survey No. 37.

"Beginning at a mound the N. W. corner of sur. No. 38, same block; thence N. at 562 vrs. to an earth mt. from which bushes at foot of rock hill on side creek brs. S. 13 W. at 1,900 vrs. to the N. W. corner of sur. No. 11, same block; thence W. 1,900 vrs. to a mound; thence S. 1,900 vrs. to the N. E. corner sur. No. 39, block W–1; E. 1,900 vrs. to the beginning."

Block R. C., north of block M–15, is composed of 18 surveys, 3 north and south by six east and west, the field notes of which are also signed by Surveyor Summerfield, said block purporting to have been surveyed January 5 to January 7, 1878, and each call in the field notes of each survey is, "Thence 1,900 varas a 'mound,'" without any natural or artificial objects as locative calls in the lines of the surveys in said block. Block W–1, partially adjoining block R. C., and likewise partially contiguous to block M–15, as stated, consists of 40 surveys, 5 east and west and 8 north and south, the field notes of which are also signed by Surveyor Summerfield, and purport to have been surveyed October 1 to October 4, 1879, and each call in all the field notes of each survey in said block is also, "Thence * * * 1,900 varas to a mound," without any marks, natural or artificial, called for in any of said field notes, except that surveys Nos. 22 and 27 in said block call to cross creek. Block M–9, north of said block W–1 and R. C., consists of 18 surveys north and south and 12 surveys east and west, constituting 216 in all, and every call in each survey in said block from the beginning call, the same as the other surveys mentioned, is, "Thence * * * 1,900 varas a mound," without any natural or artificial objects suggested for the boundaries of any survey, the field notes of which are signed by H. C. Hedrick, deputy surveyor; the block purporting to have been surveyed from May 20 to May 30, 1876. Survey No. 1, in this block, M–9, calls to tie to survey 101 in block M–8 and 203 in block 6, and blocks M–8 and M–9, adjoining each other east and west, situated partly in Randall and partly in Swisher counties, and lie south of block 6, the said block M–8 being 25 surveys north and south, and five surveys wide, east and west, the field notes also having been signed by H. C. Hedrick, deputy surveyor, and said block purporting to have been surveyed from June 28 to July 5, 1876, inclusive; and survey No. 1 in said block M–8, calls to begin at the southwest corner survey No. 208 of block 6, and each call in all the field notes to the 125 surveys in said block M–8, from the beginning call, is, "Thence * * * 1,900 varas a mound," without any natural or artifical objects called for in the field notes, except in survey 119, on the east line of the block, there are calls to cross a creek on the east and west lines of said section.

Theoretically, a continuation north of 26 miles of the west line of block M–15, beginning at the northwest corner of said block, a point would be reached upon the map about five miles or five stations east of the southwest corner of survey No. 208, an established corner, in block 6, Randall county, Tex.

A. A. Hogan, as plaintiff, sued the defendant F. J. Vannerson for the purpose of settling the boundary lines between sections Nos. 20, owned by plaintiff, and 21, alleged to have been owned by Vannerson, in block M–15, in Swisher county, Tex.; the plaintiff alleging the specific boundaries of 20, according to an iron pipe survey, which is shown by the evidence to have been made by Surveyor Hutchinson, and asserting that Vannerson's claim of the boundary line of said survey 21 would locate the same 756 varas too far south and 382 varas too far east of the correct and true boundary line, stating that, by the incorrect location of Vannerson's survey No. 21, there is a difference of 255 acres of land in conflict. The defendant Vannerson, after pleading not guilty, impleaded Avery and Smith, as the owners of survey No. 22, contiguous to 21 in block M–15, and also impleaded D. A. McSpadden, as the owner of survey No. 23 of said block (22 lying immediately north of

the Vannerson section No. 21, and 23 lying immediately west of and adjoining said survey No. 22) ; and, in Vannerson's cross-action against the appellants Avery, Smith, and McSpadden, it is charged in substance that if the land of Hogan, the plaintiff herein, is located upon the ground as plaintiff claims, then the land of McSpadden, Avery, and Smith, is in conflict with the true boundary line of his (Vannerson's land), and further alleges that said Avery and Smith are in possession of a part of said survey No. 21, owned by him (Vannerson).

The earth mound in the southwest corner of survey No. 208, in block 6, I. & G. N. R. R. survey, Randall county, Tex., likewise the southwest corner of said block, is an agreed established corner, situated over 25 miles north and several miles west of the land in Swisher county, in controversy in this suit, and about five miles west of the west boundary line of block M–15. In exhibiting the tying of block M–15, Swisher county, to the established corner in block 6, Randall county, by intermediate surveys, one question is whether, from this record, said lands in controversy are to be located by course and distance from the established monument southwest corner of said block in Randall county, or whether block M–15 (in which the lands in controversy are situated) should be controlled in its construction by any calls for purported natural or artificial objects in the field notes of any of the surveys in said block M–15, or should be controlled by any such objects in the field notes of any of the surveys in any of the intervening blocks, or the Dameron corner in block M–6, west of M–8, which would destroy the theory of course and distance from said established southwest corner of block 6. Of course, if the testimony is such as to establish indisputably the proposition that block M–15 could and should be constructed from any natural or artificial object in said block, called for in any of said field notes, the theory of course and distance from the established southwest corner of 208, block 6, would fail; or if there are any natural or artificial objects in any of the intervening blocks (to which M–15 is tied), which would control a survey from said southwest corner of said block 6—a linear measurement, including an excess (in accordance with the same excess in the corresponding five sections on the north line) of the five sections east of said southwest corner of 208, and thence south to the land in controversy, as contended for by appellee, would also be destroyed—the natural or artificial objects established in the line of surveys in some of the intervening blocks, or in the block in which the land in controversy is situated, would be just as controlling as the southwest corner of 208 in block 6, and course and distance, including the excess in the five miles east, from said 208 in said block, would be inapplicable. Again, if the Dameron corner, the northwest corner of 347, in block No. M–6, partially adjoining M–8 on the west (the field notes of which former block are also signed by Summerfield), would control the location of M–8, especially taken in connection with appellant's theory that the southeast corner of block 6 is indisputably located at a mound with a gas pipe in it, where Hutchinson and Foster seem to have located it, in retracing the east line of said block, the appellee's theory would also fail. The condition of this record, including as patient reconsideration of the same as we are able to give, convinces us that neither of appellant's theories is sound.

[1] First. As to the theory of appellants that the southeast corner of block 6 is in accordance with the testimony of Hutchinson and Foster, making the south line about 300 varas longer than the north line, and whether the jury had the right to reject said corner located by said surveyors, in retracing the lines of said block, we believe the following consideration of said matter resolves the same as a jury question.

Block No. 6, Randall county, Tex., consists of 208 sections, 16 sections east and west and 13 sections north and south; and all of the surveys in said block are certified to have been surveyed by Hedrick, the surveyor, on the 29th day of June, 1875. The field notes of all the sections call for 1,900 varas for distance, and "each call in each field note calls to run 1,900 varas to a mound, except as to surveys Nos. 1, 11, 49, 64, 65, 80, and 208. Except as to the calls for adjoining surveys in some of the field notes of said sections, which are immaterial, the following are calls for artificial objects: Survey No. 1, the northeast corner of block, begins at a monument "21X8 feet" the southwest corner of section 221, block B–4; section 65, four miles south of survey 1, on the east line of the block, in calling for the southeast corner of said section, calls for a monument "12 feet at base, 8 feet high, the southwest corner of survey No. 301, block B–4." Survey 96, immediately south of 65, calls for the same monument 12X8 feet, the southwest corner of 65, which is the northeast corner of said 96. Of course Nos. 1 and 65 and 96 on the east line of the block are fixed, and which latter we necessarily presume are situated south on the proper variation from No. 1; and going south to 193, which is the southeast section of the block, there is no described monument, or any description, or object, except that the field notes of the sections call "1,900 varas to a mound," on the east line of the block. The east line of this block and the southeast portion of the same, south of the described monument, called for in 65 and 96, falls on and across the Palo Duro canyon, which appellee says is "one of the largest, deepest and most precipitous canyons in the southwest," which, unless we know the fact judicially, we are unable to ascertain from the record. However, the record does disclose

that Mr. Hutchinson, in attempting to run the eastern portion of the south line of the block, to reach 193, from that direction, had to run the same by projections on account of the roughness of the country at a tributary of the main Palo Duro; and we do know judicially that the Palo Duro canyon is the head of the Prairie Dog fork of the Red river, which, further southeast, is known as the South fork. Going south from 65 and 96 on said east line to 193, the field notes merely call for 1,900 varas to a mound; there is no call for this canyon, nor for any creek, hill, bluff, or natural object.

Enlarging and elaborating this question a little further, we quote from appellant's witnesses:

Surveyor Foster testified:

"We started from the northeast corner of section 1, block 6, and at the southeast corner of said section we found a small mound and gas pipe in it, and at the end of the fourth mile we run (from this mound) we found an old mound called for in the original field notes, and I think it was the southwest corner of block B–4. We did not find any others south of that except mounds and gas pipes that Geraud put in. He also put the gas pipes we found in surveying the north line. When we got to the southeast corner of the block, we found a mound with a gas pipe in it. I do not remember much about how large it was. It seems to me now that it was four or five feet in diameter."

He further said the ground was covered with snow, and he could not then tell whether the mound at that place was large or small.

Appellant's witness Hutchinson, who was with Mr. Foster on this survey, testified:

"I found there (the southeast corner) what is called a mound. The last time I was there it was pounded down by cattle, and there was a hole in the ground with a pipe in the hole."

The testimony of the witnesses in regard to the small mounds, with reference to the original location of block No. 6, is correlated to several questions affecting the disposition of the case, and to explain further: Surveyor Hutchinson, appellant's witness, constructed block M–15, in which the land in controversy is situated, designated herein as the iron pipe survey, by going to the southwest corner of the block, section 208, by following the line of mounds, "not thoroughly grassed over, five stations east, with an excess to a mound near an old dim trail, called for in what is known herein as 'the McClelland run,'" in order to arrive at the beginning of the block line between M–8 and M–9. He says:

"At the southwest corner of block No. 6, I found a good, large mound, pretty fairly rounded up, and it was probably a foot or two high, or something like that. * * * In each of the mounds running east from this place there was a pipe. Those pipes, I understood, Geraud had placed there. These mounds were not thoroughly grassed over is my recollection now, in 1890."

Appellants, in reasoning upon this matter, contend that survey 208, the southwest corner section of the block, is the youngest survey in the block (though the surveyor certified that the block was surveyed in one day);

that the east line of the block was uncontradictedly established by Foster, in connection with Hutchinson's testimony, by "objects found on the ground, as called for in the original field notes" (which the jury had a right to believe that Geraud placed there); and further says:

"The parties have agreed that block 6 in Randall county is correctly located and established on the ground."

And it "therefore conclusively follows, if the field notes of plaintiff's land call for the east line of 6 (meaning through intervening blocks), * * * he is not entitled to recover on his west slide." Paragraph 9 of the agreement in the record is as follows:

"It is further agreed that the said block No. 6, in Randall county, Tex., is correctly located and established on the ground, and that its lines and corners are as testified to by Capt. A. S. Howren and W. B. Hutchinson. * * *"

Paragraph 13 of said agreement:

"The testimony mentioned in paragraph 9 above was given by said Capt. A. S. Howren and W. B. Hutchinson in another cause, heretofore tried, involving similar questions as herein involved, in which former trial said Capt. A. S. Howren testified that the excess in the north lines of surveys Nos. 12, 13, 14, 15, and 16, block 6, I. & G. N. Railway Company, Randall county, was 94 varas, and said Hutchinson testified in said former suit that such excess was 114 varas."

The qualification in paragraph 13 that the testimony in the former trial, mentioned in paragraph 9, was in regard to the excess in the five eastern surveys on the north could not be regarded as an agreement that the location of block 6 upon the ground is in accordance with the testimony of Hutchinson, corroborated by Foster, in this trial; if so, appellants do not need any argument as to a part of the cause; the agreement concludes it. Hutchinson's conclusions in this trial, as to the south line of block 6, by which he locates the northeast corner of M–8 and the northwest corner of M–9, in connection with his testimony as to the location of the southeast corner of said block 6, which conforms to that of Foster, would end that part of the case. Appellee's allegation in his petition as to a west slide would be futile; and his alleged position that the excess in the five sections east of 208 in block 6 (in order to reach the common northeast and northwest corners of M–8 and M–9) is the same excess as in the corresponding five sections on the north would also be totally destroyed; notwithstanding this, we would not hesitate, of course, to give an agreement the emphatic effect to which it is entitled, but the testimony, in the former trial, of Howren and Hutchinson, as to the location, in said trial, except as indicated by paragraph 13 of the agreement, is not shown.

According to the Hutchinson-Foster survey, for the southeast corner of block No. 6, the south line of the block, as situated, would be 300 varas longer than the north line. Foster says that the mound at the northeast corner of the block was also a large mound similar

to the others called for in the field notes, about 12 feet in diameter, and starting south from there, at the southwest corner of block B–4, they found another old mound called for in the original field notes, and we are unable to presume that this described mound, the common corner of 65 and 96, and the southeast corner of block B–4, as called for in the original field notes, was off its course, the record does not show it was not south and not with the variation as called for in said original field notes, and if the jury had a right to conclude that Geraud put in the small mounds to the southeast corner of the block, making the same 300 varas east of the northeast corner of the block they had a right to presume that the true line from said northeast corner south to the monument, as called for in said field notes, at surveys 95 and 96, and thence south course and distance, would locate the true southeast corner of said block, and make the south line practically conform to the north line of the block.

The defendant McSpadden, by requested charge, given by the court, evidently solicited a finding of the jury as to the location of the land in controversy, by course and distance through the intervening surveys, from the southeast corner of 193 in block 6, if they believed that "said southeast corner is an original corner," and the jury found against this theory, with reference to which the evidence was sufficient.

[2] Second. As to the influence of the Dameron corner affecting the land in question, the defendants McSpadden, Avery, and Smith requested the following charge, which was given by the court:

"You are instructed that if you find and believe from the evidence that the original surveyor, John Summerfield, intended to and did locate the land of plaintiff course and distance from the southwest corner of survey No. 347, block M–6, Castro county (that is, that the land of plaintiff was located on the ground the actual course and distance called for in the intervening field notes between the survey of plaintiff and said southwest corner), and you further believe that any call for an original corner at the southwest corner of 208, block 6, in the field notes intervening between plaintiff's land and said survey 347 was a mistaken call, and further find that said southwest corner of 347 is located on the ground as testified to by the witnesses Foster and Hutchinson, your verdict will be for the defendants."

Block M–6, a large block 18x20 sections in width and length (360 sections in all), beginning with section 6 of M–8, lies immediately west of the latter block. Survey No. 1 of M–8, and the initial section of the block, is tied to the established southwest corner of block 6, Randall county. Immediately north of M–6, and immediately east of M–8, for the length of five sections of the latter block, is the J. Gibson survey, which, according to the map, corners with M–8 and block 6 at section 208, of the latter block, where the agreed established corner is situated. Any survey we have in this record indicates that M–6 does not reach M–8, at least by any run made from the Dameron corner east to a point, in order to make M–15 conform to the same. It is true M–6 is an older block than M–8; but, according to the evidence here, it at least has its full complement of land east and west; being an older block, it takes its position on the ground entitled by the field notes. It is hard for us to understand the position of appellant as to the theory of the Dameron corner as a preponderating influence with reference to the location of M–8, M–9, and M–15, along with R. C. and W–1; they cannot contend that survey 1 of M–8, five miles north of M–6, could be torn from the established corner of 208 in block 6 and, for aught this record shows, pull it over on the Gibson; and, if such a movement could not occur, then to begin with survey 6 in block M–8 and pull it over to M–6, and if M–6 extends only as far east as the evidence here indicates, speaking for this proceeding only, would be equally untenable. Again, block M–9, an older block than M–6, also theoretically senior to M–8, must of course join M–8, and assume the position that block assumes with reference to the division boundary between them. Why survey No. 1 of M–9, adjoining M–8 and block 6 (east of the former and south of the latter), should not begin at a correct distance, the same as M–8, east of 208 in block 6, which has an established corner, is not soluble by any reasonable rule attempted to be applied to this record. Applying appellant's oft-used expression, if we followed their logic in regard to the Dameron corner, it would destroy the configuration of the block; and the jury at least had a right to reject such a "configuration."

[3, 4] Third. As to the north and south lines of block M–15, in which the controverted land is situated, the appellants insist that, beginning at the proper point, east of the southwest corner of block No. 6, thence south between M–8 on the west and M–9 and W–1 on the east, in order to reach M–15, there are mounds on the block lines for 21 stations, averaging a distance of about 1,917 varas between the stations, of sufficient controlling significance as to destroy the theory of a survey by course and distance from the agreed established corner in said block 6, admitting the excess of 94 or 114 varas in the corresponding five sections on the north of said block. It is shown that when an old pasture fence, designated in this record as the J. A. fence, was constructed in 1885, these mounds were in existence along the purported block lines as indicated, and one witness testified that said mounds were grassed over at that time, suggesting, of course, a previous construction of same at some period antedating the construction of the fence.

It is shown in this record that one T. S. McClelland, in February, 1884, for the pur-

pose of running a connecting line between the northwest corner of survey No. 80 in the west line of block No. 6, Randall county, and the northwest corner of survey No. 156, in block A, A. & B. survey, in Swisher county, called for these mounds, and the jury could infer, constructed them, also the other artificial objects otherwise mentioned along this line, or in other portions of same on the same run. McClelland began at the rock monument six feet at the base and six feet high on the edge of a steep bluff, at the head of the Ralo Duro canyon, for the northwest corner of survey No. 80 (called for in the field notes of block 6), and then surveyed south "to a large earth mound for the southwest corner of block No. 6, * * * thence ran east 9,500 varas to earth mound, with cedar stake 26 varas west of old dim trail for the southwest corner of 203," in order to obtain the beginning of the division boundary line between M–8 and M–9. He then ran "south 9,500 varas to a large earth mound with cap rock, marked "X" on high divide of plains for the southwest corner of survey No. 5, block M–9." He then continued south, each mile marked with mound, 24,700 varas, to another earth mound, with a cedar stake, marked "X" for the southwest corner of survey 18, said block M–9. He then continued south, "with each mile marked with mounds, stones, and stakes, 15,200 varas, to large earth mound with cedar stakes and buffalo bones on top 80 varas west of lake, being the southwest corner of block W–1, Swisher county," thence going east, thence south, thence east again, for the connection with block A. McClelland certifies:

"That the above is a true and correct copy of field notes taken in the field, and that the corners and marks, both artificial and natural, are truly described."

Surveyor Hutchinson afterwards constructed M–15 by using these particular mounds believed by him to be the block lines between M–8 and M–9 and W–1, and assuming them to be the original survey for Gunter & Munson. It is shown that Hutchinson had a copy of McClelland's "run" the first time he ever found the particular mounds in question. Considering his certificate, it is inferable as a jury question that these were the same mounds described by him. At the point McClelland turned south he ran 9,500 varas to the large earth mound with cap rock marked "X" on the same; when Hutchinson turned south he ran a distance of 9,698 varas to reach this mound. McClelland ran east 9,500 varas from the southwest corner of block 6, to the earth mound with a cedar stake 26 varas. "west of an old dim trail." Hutchinson, in going from the southwest corner of block 6, five stations east of there, ran each station 1,961.8 varas to the mounds, which he says were not thoroughly grassed over in 1890,

and as before stated, the jury could have inferred, were placed there by Geraud. As to this particular run, he says:

"At the end of the fifth mile, in making this east run from section 208, I ran east there 54 varas and then turned south 181 varas, I ran east 54 varas to that mound. It was an old flat mound out on the prairie, and just on the southwest side of it was an old trail— * * * a buffalo trail. * * * At that time we were south and east of block 6, five miles and 360 varas."

The corresponding excess in the northern five sections, as stated, from the northeast corner of the block, is, as agreed to, either 94 varas, according to Howren, or 114 varas, according to Hutchinson, in accordance with the established corner at section 12, called for in the field notes of the block—a described monument the same as others described in said field notes, except the southwest corner of 208, which is called a mound instead of a monument. While the distances are different, the objects are the same in comparing the two surveys, in tracing the lines through on the "McClelland run."

The field notes of blocks 6, M–6, M–8, and M–9 were certified to by Surveyor Hedrick, who was not a practical surveyor and was not in the field doing the work, or assisting in the same. John Summerfield, the surveyor in charge of the Gunter & Munson work, certified to the field notes of blocks W–1 and M–15, and testifies:

"There was not any survey made of the east line of block M–8, to my knowledge, before the same was platted in. The field notes of the survey in said blocks M–6, M–8, M–9, M–13, M–15, and W–1 were made out in Gunter & Munson's office, Sherman, Tex., as the certificates were applied for."

And he also says:

"I did the field work (that is, the actual surveying), that was done for Gunter & Munson, during the year 1876. H. C. Hedrick, who was not a practical surveyor, was never in the field, signed the field notes to the surveys in blocks M–6, M–8, and M–9, in Castro, Randall, and Swisher counties, after I had platted and made them out on the lines described in my answer to direct interrogatory No. 13."

And when you consult direct interrogatory No. 13, you find a "cross-country" run, not necessary to delineate, at which time Summerfield located the Dameron corner (afterwards the northwest corner of 347 in said block M–6); and at that point the party split, Mr. Summerfield, with a division of the party, surveying south, and Mr. Gunter, in charge of the other portion of the party, surveying east from said established object, the two parties evidently intending to connect, which connection was never properly made. It is suggested in this record, at least as a jury question, that no member of Gunter & Munson's party, by whom the particular lines and cross-country surveying was being made, constructed any such mounds and erected any of the artificial objects called for in the McClelland connecting line as certified to by him; though block M–8 is junior to M–6

(block M–9 being senior to both), Summerfield testified, as stated, that while Hedrick, who was never in the field and was not a practical surveyor, and signed the field notes to the surveys in the three blocks mentioned, they were platted and made on the lines described in the general surveying ran by him in 1876; and the record discloses that very little of the east run from the Dameron corner, made by the Gunter portion of the party, was adopted when said block M–6 was platted in. Hence it is suggestive, as a jury question, that McClelland, eight years after the parties were in the field, constructed said mounds and also the other artificial objects, mentioned along the "McClelland run," or adopted the work of some other person, not connected with the original surveying done by the Gunter & Munson party in that country. If the jury, as a question of evidence, had the right to find this, and, as an additional matter of evidence, had the further right to find that Geraud placed the smaller mounds over 1,900 varas apart on the five-mile run east of the agreed southwest corner of the block, as well as the mounds and gas pipes from the common corner of 65 and 96 on the east side of the block, south to the purported southeast corner of the same, and that McClelland established the monument near the old buffalo trail, and that the original surveyors had not established the same as to block 6, then they had the right to infer that M–8 and M–9 were tied to block 6, as the latter is located by the five described artificial objects called for in the field notes of said block 6, by course and distance from the southwest corner of said block, giving effect, however, to the excess either 94 or 114 varas east of said corner, corresponding to the same excess in the corresponding five sections on the north. In accordance with this construction, blocks Nos. 6, I. & G. N., and blocks M–8 and M–9, south of block 6, and the common corners and the "configuration" of the blocks, would be harmoniously maintained.

That a survey was an office survey may be proven by circumstantial evidence is well settled; and, as we think quite pertinently suggested by the appellee, some of the circumstances showing that the lands involved herein, blocks M–6, M–8, M–9, W–1, R. C., and M–15, were office surveys may be stated as follows: The 360 surveys in block M–6 were made in 20 days; the 216 surveys in M–9 were made in 10 days; the 124 surveys in M–8 were made in 7 days; the 40 surveys in block W–1 were made in 4 days; and the 36 surveys in block M–15 were made in one day. As shown by the maps introduced in evidence, and as suggested by other testimony, there are creeks and canyons in the country covered by some of the blocks, which are not even mentioned in the field notes. Cedar draw runs through both M–8 and M–9, and

is not mentioned; the North Tule canyon runs through M–8, W–1, and M–15, and is not mentioned, except that the field notes of 119, M–8, call to cross a creek, but do not say at what distance, and there are two points or calls for natural objects in M–15— a call for bushes at the foot of a rocky bluff and the call for a rock. South Tule canyon also runs through blocks W–1 and M–15, and, in so far as you could determine from the field notes of M–15, there is no such thing as South Tule canyon. Two surveys in block W–1, Nos. 22 and 27, call to cross a creek, giving, however, no distances. Of course Summerfield and Gunter knew that there were creeks in the country, but we think it is clear what few calls there are for creeks are not locative but only descriptive calls. The witness Hutchinson, who surveyed the iron pipe survey from the southwest corner of block 6, with the mounds as mentioned, had attempted to locate every survey in Swisher county, and attempted to place himself at three corners of every survey in said county, and never found any mounds. It is true that the bushes and the limestone rock are not mentioned as having been found and identified by any witness in this record, but the jury may have well considered, in connection with Summerfield's testimony, that the field notes of the surveys in M–15, in calling for natural objects, as bearing calls, was guesswork or mistaken calls. The field notes to survey No. 1 in block M–15 call to tie to survey No. 13 in block R. C. Block R. C. is unquestionably an office survey. While the particular field notes of survey No. 1 are not mentioned in this record, however, it is stated that each of the field notes of the different surveys in M–15, except Nos. 2, 3, 11, 15, and 37, "in calling for distance, calls to run 1,900 varas and each call for a mound." Survey No. 2, invoked by appellants, calls for "a beginning at a mound the southwest corner of survey No. 1, same block; thence west 1,900 varas to a mound, from which a large lime rock 80 varas north of the South fork of Red river bears 67¾ west, 910 varas; thence north 1,900 varas to the southwest corner of survey No. 14, in block R. C.; thence east 1,900 varas to a mound; thence south 1,900 varas to the beginning." These are "mound" surveys, which Hutchinson never found. The jury had the right to consider that the mounds called for in the field notes were "office mounds," and, if the corners never had any "footsteps," they had the right to reject the bearing calls, especially taking into consideration the testimony of appellant's own witness, Hutchinson. Surveys Nos. 3, 11, and 37, in the same block, are equally in the same condition with reference to the calls for objects controlling the location of block 15. The demand for a peremptory instruction by the defendants, with the ten propositions of

appellants following the assignment, are disposed of by the foregoing discussion.

The court, in the first paragraph of his general charge to the jury, indicated that the lines and corners of block 6, as testified to by the witness W. B. Hutchinson, correctly located that block upon the ground; however, in other portions of the general charge, and as manifested by the special charge solicited by the defendants and given by the court, mentioned in this opinion, with the exception of the undisputed artificial objects called for in the field notes of block 6, the location of the block otherwise was left to the jury as a litigated issue.

[5] Appellants assign error as to the action of the court in refusing the following special charge:

"If you believe from the evidence that block M–15 is an office survey, and you further believe that the southeast corner of block W–1 is marked and defined by a mound, as testified to by W. B. Hutchinson, placed there by the original surveyor prior to the writing of his field notes, or by some other person called for by him in his field notes, then your verdict will be for defendant."

We think the general charge of the court comprehends the question attempted to be injected by this charge. The suggestion to the jury in this charge as to the southeast corner of block W–1 has reference to a corner shown by his field notes in the McClelland run, previously discussed. We believe no error is shown in this matter.

[6] The appellant excepted to the action of the court, illustrated by the following condition: While Conner, a witness for the defendant, was being examined by plaintiff's counsel, he was asked the following question:

"State if you can say it (referring to a mound near Gray's house, about two miles west of Tulia) had a general reputation as a corner."

To which the witness answered:

"Mr. McClelland told those parties he surveyed for it was."

Thereafter the court, upon motion of plaintiff, eliminated this testimony from the record, admonishing defendant's counsel not to argue the same, which we think was entirely proper, as the evidence is clearly inadmissible. In view of the record in this case, we can see no injury or any error in the action of the court in refusing to submit to the jury appellant's fourth special requested charge. The criticisms in the general objections, leveled at the court's general charge, assigned by the appellants, are not well taken.

The original opinion in this case is withdrawn, and as to certain portions of this case, different reasons having been given for the affirmance of the judgment of the lower court, the appellants, if not already entitled to the same, are given 15 days in which to file an amended motion for rehearing in said cause.

It is ordered that the motion for rehearing be in all things overruled.